# HERSEY v. MERRIMACK COUNTY MUTUAL FIRE INSURANCE COMPANY.

If an applicant for insurance, in a mutual fire insurance company, fraudulently over-value the property insured, the policy issued upon that over-valuation, may be avoided by the company on that ground.

The offers of a party to sell at a certain price, are competent evidence against him that the property was not worth more.

ASSUMPSIT, on a policy of insurance for the sum of $400, issued by the defendants to the plaintiff, on the 10th day of July, 1847, for the term of six years.

It appeared that the plaintiff became the owner of the land and building on the 15th day of May, 1847, and paid for them $100 in cash, and $200 in various articles of barter, not equal to $200 in cash, making the nominal consideration of the property to be $300. There was about one and one-fourth acres of land. The building was destroyed by fire on the 8th day of December, 1848.

In the course of the trial, it became material to ascertain the value of the property destroyed, and, among other evidence tending to show its value, the defendants offered a witness, who testified that the plaintiff, a short time before

the fire, said he would sell the house and land for $350, or the house alone for $250. The competency of this evidence was excepted to, but it was admitted, subject to exception.

The principal grounds of defence relied upon were, that the building was destroyed by the design of the plaintiff himself, and that the plaintiff falsely and corruptly over-valued the property, with the intent and design of cheating and defrauding the company.

In his application for insurance, the plaintiff represented and stated the property insured to be worth $600, and requested insurance on the same for the said sum of $400.

Evidence was introduced without exception, tending to show that the plaintiff falsely and fraudulently represented the value of the property at more than double what it was worth, and procured it to be insured for more than $100 above its value.

On this point, the court instructed the jury that if they found that the plaintiff fraudulently over-valued the property, with the intent and design of defrauding the company, and of receiving from them more than the building was worth, in case of its destruction by fire, the policy would be void. To which instructions the plaintiff's counsel excepted.

The jury having returned a verdict for the defendant, the plaintiff moved to set the same aside and for a new trial, for supposed error in the foregoing rulings of the court.

*Bellows*, with whom were *Nesmith* and *Pike*, for the plaintiff.

I.  The representation of value was not material to the risk, and, therefore, would not avoid the policy.

The charge of the judge was, therefore, erroneous upon that point.

The policy refers to the " description, situation and degree of exposure, given in the application for this insurance, as a part of the policy." But does not make the represen-

tation of value a part of the policy, and, therefore, there is no warranty. *Jefferson Ins. Co.* v. *Cotheal,* 7 Wend. 72.

Then, by the express terms of the policy, the defendants were only " to make good ·the loss or damage, to be estimated according to the actual value of the property at the time of the loss, not exceeding the amount insured, nor the limited proportion of value insurable by the by-laws."

This is to be ascertained by appraisal, and can in no way be affected by the value represented. *Post* v. *Hampshire Ins. Co.* 12 Met. 555, is decidedly in point.

The representation of value, then, was not material to the risk, and if not material to the risk, could not avoid the policy, even though fraudulently intended.

The essence of the fraud is a representation known to be false, and designed and calculated to deceive the insurer, and to cause him to enter into a contract that would not otherwise have been made.

But it cannot be pretended that the representation, in this case, could have had any such effect. For the contract actually made only binds the defendants to pay according to the actual value of the property, regardless of the value stated in the policy.

Such is its legal effect, and the representation of value has an operation only to increase the amount of the premium to be paid.

In adjusting the loss, it is true the insurer might be more or less influenced by the representation of the insured, in his application; but it would have no legal bearing whatever upon the amount of liability.

That the misrepresentation must be in a matter material to the risk, we refer to *Hodgson* v. *Marine Ins. Co.* 5 Cranch 100; *Clason* v. *Smith,* 3 Wash. C. C. 156; *Columbian Ins. Co.* v. *Lawrence,* 2 Peters 25; *Alston* v. *The Mechanics' Mut. Ins. Co.* 4 Hill 330–344.

So it was held that the concealment of a fact that could, in no event, increase the risk, does not avoid a policy. *Lexing-*

*ton Fire, Life and M. Ins. Co.* v. *Pavor,* 16 Ohio Rep. 324; *Delabay* v. *Memphis Ins. Co.* 8 Humph. 684.

In *Kentucky and Louisville M. Ins. Co.* v. *Southard,* 8 B. Monroe 634–644, it was held that a plea to an action upon a policy of insurance, relying upon a fraudulent representation, should aver that it was material to the risk or rate of insurance, and point out in what.

*Alsop* v. *The Commercial Ins. Co.* 1 Sumner 451, 458, it was held that a misrepresentation or concealment to avoid the policy, must be of some fact material to the risk, important to guide the underwriter not only as to the premium he should ask, but also whether he should underwrite at all.

II. The offer, by the plaintiff, to sell for $350, was not admissible as proof of the value.

The proper evidence of value is the market price of the article.

A mere offer to sell is not admissible, and it makes no difference that the offer was made by the plaintiff.

It is, at most, only an expression of opinion, not the statement of a fact.

*Pierce & Minot,* for the defendants.

I. The instructions of the court below, in relation to fraudulent over-valuation, &c., were correct. The general principle, that a concealment or misrepresentation simply to avoid a policy, must be in a matter material to the risk, is not disputed. But this principle or the grounds on which it stands are not applicable to cases where there is actual intentional fraud. There the fraud vitiates the policy. This distinction is recognized in *Jefferson Ins. Co.* v. *Cotheal,* 7 Wend. 72; *Houghton & al.* v. *Manufacturers' Ins. Co,* 8 Met. 120 ; *Curry* v. *Commonwealth Ins. Co.* 10 Pick. 535 ; *Dennison* v. *Thomaston Ins. Co.* 20 Maine Rep. 132.

II. But the value was, in this case, material. It was, in fact, expressly made so by article 11 of the by-laws of the company, which provides that each application shall state

correctly the value of the property to be insured. It was in law so, as affecting the question of value and the evidence in relation to it.

It has been held that insurance companies were concluded against showing an over valuation, unless fraudulent. *Holmes* v. *Charlestown Ins. Co.* 10 Met. 211; *Fuller* v. *Boston Ins. Co.* 4 Met. 206; *Borden* v. *Hingham Ins. Co.* 18 Pick. 523.

If, then, the valuation expressed in the policy is thus, in the first instance, conclusive or even *prima facie* evidence in relation to the value, that valuation is material.

Besides, the general principle, stated in Sumner 451–459, cited by the plaintiff, is conclusive in this case. For it cannot be supposed that, had the real facts been known to the defendants, they would have granted this policy, at least to the amount for which it was given. The charter and by-laws expressly forbade insurance of over two-thirds of the real value. By granting such a policy, the company, instead of securing the object intended by that salutary provision—preventing fraud—would have *directly* encouraged it, by holding out to one who might not fully know the extent of his claim under the policy, the expectation of receiving the whole amount insured; and to one who did know, the chance of getting more, without any risk of losing. This provision of the charter and by-laws shows that the company considered the valuation a material matter, and the statement of it, in the printed application of the plaintiff, was notice to him of their view of the same.

III. The evidence of the offer of the plaintiff to sell, &c., was properly admitted. It was proper and important in its bearing on the question of fraud in the over valuation, as showing that the value, set by the plaintiff, in his application, was not an error of judgment, but much more than he himself considered the real value.

It was equally so in its bearing on the point of the burning of the property by the plaintiff himself, as showing

whether he might have expected to have got from the insurance more than his actual loss. And it was offered by the defendants for these purposes. And the evidence would seem to have been properly admissible against the plaintiff, with reference generally to the value. The evidence of an offer to sell is as much evidence of a fact as evidence of an actual sale.

The witness expressed no opinion; he merely stated a fact. Nor is an offer to sell more a matter of opinion than an actual sale; the latter is, to be sure, the concurrent opinion of two or more, but still, not less an opinion.

From the argument of the plaintiff's counsel in *Rochester* v. *Chester*, 3 N. H. Rep. 360, evidence of offers to sell seems to have been admitted without exception in that case. And if evidence of offers to sell is not admissible, it would seem to be, not on the ground that they are more matters of opinion than actual sales, but on that of policy. Offers might be got up merely for the purpose of evidence in a particular case. But the reason does not apply to offers by a party himself. He would not get up evidence against himself. Such offers by the party would seem like admissions, to be admissible in evidence against, nor for him.

And a party would seem to have little ground for objection, that his own estimate of his property should be considered in determining its value.

WOODS, J. The plaintiff, in his application for insurance, represented the property insured to be worth $600. This application was signed by him and delivered to the underwriting party, and is referred to in the policy. It cannot admit of a question that the company were induced by the plaintiff's representation of the value of the property, to insure it to the amount they did. If that was a false representation and an over valuation, it was, of course, the cause that a larger risk was taken upon the property than would have been taken if a true and just valuation had been ex-

hibited. By the fraud of the plaintiff, the defendants have been induced to make a different contract from any which, but for that fraud, they would have made. By what precise ulterior steps the plaintiff hoped to make a gain by his fraud, or what would have been the legal consequences if it had remained undetected, the defendants are not bound to point out or we to inquire.

If, as has elsewhere been held, the parties to such a contract as this are concluded by an innocent over-valuation in the adjustment of the loss, as well as in the arrangement of the premium-note and the payments; or even if the plaintiff had reasonable ground to hope that the valuation contained in the policy would not, in fact, be drawn in question upon the adjustment of the loss, a conjecture might be hazarded as to the aim and intent of the supposed fraud.

It is, indeed, suggested by the plaintiff's counsel, in argument, that the policy provides, in terms, that the company shall not, in the event of a loss, be liable for more than the proper proportion of the value of the property at the time of the loss. If anything more is intended by that clause of the policy than to provide for a re-valuation, in case of a depreciation of the property before the loss, and if it really reserves to the defendants a right to revise the valuation, it certainly was not designed to invite or authorize fraudulent misrepresentations from parties applying for insurance. A revision of innocent and unintentional over-estimates is the most that can have been aimed at.

There is no clearer principle of law than that a party, who has been surprised into making a contract, or into making a different one from that which, but for such surprise, he would have made, may treat his act as a nullity. It is not for the other party to say that he had not an object in some way injurious to the party defrauded, much less that such object has been defeated by the detection of the fraud.

The court instructed the jury that the policy would be void, if the plaintiff fraudulently over-valued the property,

with the intent and design of defrauding the company, and of receiving from them more than the building was worth, in case of its destruction by fire.

The jury have, upon that instruction, found a verdict to which the only objection seems to be, that the fraudulent over-valuation was not material, as having no necessary and inevitable tendency to secure the dishonest end attempted. This objection appears to us to proceed upon a false theory, and is besides, perhaps, not well founded in point of fact. We cannot disturb the verdict on such grounds.

We think the evidence of the plaintiff's offers to sell the property correctly admitted. The plaintiff, in this suit, contends for a high valuation of the property, the defendant for a low one. There seems to be no principle which should exclude these sayings of the plaintiff from the general rule making them evidence against himself. An actual sale would have been evidence that the property was worth the price. An offer to sell is evidence, at least, against the person offering, that it was not worth more than the sum demanded. The offer shows the plaintiff's estimate of its value, and on the question of fraud, is of great force.

*Judgment on the verdict.*